UNITED STATES BANKRUPTCY COURT Southern District of Texas
ENTERED
04/04/2008

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| DONALD and MYRA SWOR, | ) | CASE NO. 07-31188-H3-7 |
| Debtors | ) | |
| BARTLEY TEXAS BUILDERS HARDWARE, INC., | ) | ADVERSARY NO. 07-3280 |
| Plaintiff | ) | |
| v. | ) | |
| DONALD and MYRA SWOR, | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

The Court held a trial on the "Plaintiff's Original Complaint To Deny Discharge Pursuant to § 523" (Docket No. 1) filed by Bartley Texas Builders Hardware, Inc. After consideration of the pleadings, evidence, testimony, argument of counsel, and the oral motion of counsel for Donald and Myra Swor for Judgment as a matter of law, pursuant to Bankruptcy Rule 7052(c), at the end of Plaintiff's presentation of evidence, the court made oral findings of fact and conclusions of law. The court granted Judgment in favor of Donald and Myra Swor, Defendants. The court here supplements its findings of fact and conclusions of law. To the extent that any findings of fact are deemed to be conclusions of

law, they are hereby adopted as such. To the extent that any conclusions of law are deemed to be findings of fact, they are hereby adopted as such.

Findings of Fact

1. Plaintiff, Bartley Texas Builders Hardware, Inc. ("Bartley"), pursuant to 11 U.S.C. § 523, seeks to have this court determine as nondischargeable the amount of $8,883.08, representing invoices for material supplied by Bartley to Swor's Glass & Mirror, Inc.

2. Plaintiff alleges that Donald and Myra Swor, Debtors and Defendants herein, are personally liable for the debt and that the debt is nondischargeable pursuant to § 523(a)(2)(A) based on false representations of the debtors, § 523(a)(4) based upon fraud or defalcation while acting in a fiduciary capacity, and § 523(a)(6) based on willful and malicious injury by the debtors to another entity or to the property of another entity.[1] Complaint, Docket No. 1.

3. Donald Swor[2] and Myra Swor owned and operated a small business, Swor's Glass & Mirror, Inc. ("Swor's Glass"), for thirty-three years. Swor's Glass provided and installed glass in

[1] Plaintiff's Complaint (Docket No. 1) solely references sections 523(a)(4) and 523(a)(6) and does not include a request for other and further relief. However, "Plaintiff's Pretrial Statement [Corrected]" (Docket No. 14) references sections 523(a)(2) and 523(a)(4) and does not address section 523(a)(6). The court has considered all of the above referenced subsections of 523 as a basis for Plaintiff's requested relief.

[2] Donald Swor passed away on November 29, 2007.

commercial buildings during construction. During 2003 and 2004, Swor's Glass had several contracts and Bartley, in the business of supplying commercial hardware, supplied materials to Swor's Glass for some of these projects. Bartley invoiced Swor's Glass for these projects and some of the invoices were paid. Bartley's Exhibit No. 2; Testimony of Myra Swor.

4. On October 3, 2005, Swor's Glass filed a chapter 11 bankruptcy proceeding in an effort to restructure its debt to continue in business. Case No. 05-46804-H5-11. Bartley was scheduled as an unsecured creditor of Swor's Glass in the amount of $8,883.08 for the invoices that had not been paid. Debtors' Exhibit Nos. 13-15. The case was converted to a chapter 7 proceeding on August 7, 2006. Case No. 05-46804-H5-7, Docket No. 37.

5. On February 16, 2007, Donald and Myra Swor, filed a joint petition under chapter 7 for their individual debts. Case No. 07-31188-H3-7. Bartley was scheduled as an unsecured creditor with a contingent and disputed claim in the same amount as that listed for the invoices issued to Swor's Glass. Debtors' Exhibit Nos. 10 and 12.

6. Debtors were principals and operating officers of Swor's Glass. Mr. Swor executed a Credit Information Request with Bartley's on November 16, 1995 which included Mr. Swor's personal guarantee of all indebtedness incurred by Swor's Glass. Plaintiff's Exhibit No. 1. Myra Swor testified that Swor's Glass

and Bartley maintained a long and prosperous business relationship. She testified that her husband respected Brad Bartley (owner of Bartley) and felt bad that Swor's Glass could not pay him. Subsequent to the company's filing bankruptcy, Mr. Swor and Mr. Bartley continued doing business together when Mr. Swor was employed by Meyerland Glass.

7. Mrs. Swor testified that during 2003 and 2004 Swor's Glass had three bank accounts with herself and her husband as signatories. The accounts were general fund accounts and payments from construction projects were deposited in these accounts dependent upon which account required funds. She further testified the money in the general accounts was used to pay all suppliers and that all bills of Swor's Glass were paid out of these accounts. The funds in these accounts were used to make payments on payroll to employees, payroll taxes, payments on loans from banks, and payments on loans from the Debtors individually. Mrs. Swor testified that these accounts were not used to segregate funds received on particular projects.

8. Mrs. Swor testified that once Swor's Glass began having financial difficulty, in order to continue operating the business, she and her husband infused over $106,000 of their personal funds into the business. They refinanced their home, cashed in life insurance policies, and Mr. Swor sold a small plane he owned. The funds from all of these sources were put into the business in order to maintain operations and attempt to avoid

having to file bankruptcy.

9. Mrs. Swor testified that, prior to the bankruptcy filing of Swor's Glass, she and her husband paid the company's outstanding bills as funds became available, with the priority of payment based upon the oldest and most urgent invoices. Mrs. Swor testified that neither she nor her husband made any payments from the accounts of Swor's Glass intentionally, knowingly or with the intent to defraud any of their creditors, including Bartley. Mrs. Swor did state on cross examination that when she paid a particular invoice she was aware that some others remained unpaid.

10. She testified that Mr. Swor would draw $547 per week and she would draw $362 every two weeks. The employees of Swor's Glass were paid more than the Swors. The Swors took no vacations and their annual income in 2005 was minimal, with Mr. Swor receiving income from the business in the amount of $25,800 and Mrs. Swor the amount of $11,680. Debtors' Exhibit No. 12. The court finds that Mrs. Swor was an honest and credible witness. The court also finds that Mrs. Swor was knowledgeable and credible in connection with the operation of Swor's Glass and in connection with her husband's participation in the business.

11. The Swors honorably ran their business for over thirty years, devoted all of their energy into maintaining their business and trying to provide for their employees. Although Debtors invested their life savings into the business, took meager salaries, and lived modestly, late in their lives they were unable

to continue operating Swor's Glass successfully. Mrs. Swor testified that she and her husband did not want to file bankruptcy on behalf of the business or themselves individually. She testified that she and her husband did all in their power to keep the business operating and to pay their suppliers. Testimony of Myra Swor. The court finds that neither Mr. or Mrs. Swor had any intent to defraud Bartley.

12. In connection with Bartley's contentions that its claim is nondischargeable under section 523(a)(2)(A), based upon false representations of the Debtors, Bartley failed to present evidence establishing that Debtors made false representations. The court finds that Bartley did not sustain its burden of proof in establishing that the debt is nondischargeable under section 523(a)(2)(A).

13. Bartley alleges that its claim is nondischargeable, pursuant to section 523(a)(4), as a result of Debtors' fraud or defalcation while acting in a fiduciary capacity. Bartley contends that, pursuant to the Texas Construction Trust Fund Statute ("TCTFS"), Chapter 162 of the Texas Property Code, it is the beneficiary of any monies received by the Debtors on projects where Bartley supplied materials, as these monies are considered to be trust funds held by Debtors as trustees. Bartley contends that Debtors were fiduciaries under the TCTFS and they breached their fiduciary duty by failing to comply with the statute.

14. Bartley contends that Debtors failed to comply with the TCTFS in that they failed to have these funds segregated into a separate account. Bartley further contends that Debtors failed to comply with the statute in that they failed to first pay the current or past due obligations (including Bartley's claim) with the funds that were generated from these projects before paying any other business expenses, and that this diversion of funds was done by Debtors intentionally or knowingly or with intent to defraud.

15. Bartley's primary focus in connection with the diversion of funds was that the Debtors "knowingly" used these funds for expenses not directly related to "the project." According to Bartley, Debtors' non-compliance with the requirements of the TCTFS resulted in their having misapplied the funds from the construction projects and as such, its debt is nondischargeable under section 523(a)(4).

16. Bartley cites the case of *In re Cimarolli*, Slip Copy, 2006 WL 2090212 (Bankr. S.D.Tex. 2006) in support of its position. As to the segregation of trust funds, the TCTFS provides trust funds are to be maintained in a separate account only in certain circumstances. Section 162.006 of the TCTFS, added in 1997 by the Texas Legislature, only requires the establishment of a "construction account" when a contractor "enters into a written contract with a property owner to construct improvements to a residential homestead for an amount exceeding $5,000." Section

162.007 specifies the elements for managing a construction account in the event one needs to be established under section 162.006. These sections of the TCTFS are not applicable to the facts of this case. As previously noted, Swor's Glass provided and installed glass in commercial buildings during construction and Bartley was in the business of supplying commercial hardware to Swor's Glass for some of these projects.

17. The TCTFS includes a scienter requirement, evidence of an intentional and knowing diversion of funds, which results in a misapplication of the trust funds, i.e., "intentionally or knowingly or with intent to defraud."[3] In the instant case, the TCTFS "criminalizes knowing or intentional as well as fraudulent misapplications of trust funds," but it does not require the fund holder to segregate funds by source and project or prohibit the commingling of funds in this case (as section 162.006 is inapplicable); it does not bar use of funds provided for one project to pay bills incurred on another project if this is done without any fraudulent intent; and it does not "create 'red,' 'blue,' and 'yellow' dollars each of which can only be used for the

---

[3] The statute was initially enacted in 1983 and required the trustee to act with "an intent to defraud." In *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 586 (5th Cir. 1987), the 5th Circuit interpreted this earlier version of the statute to create a "fiduciary duty only to the extent that a trustee should not divert trust funds with intent to defraud." In the case of *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992), the Fifth Circuit interpreted the current statute and recognized that the statute had been amended in 1987 to broadened the scienter element of a trustee's misapplication of trust funds to include "intentionally or knowingly or with intent to defraud."

'red,' 'blue,' and 'yellow' construction project." *See Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 586 (5th Cir. 1987); *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992); *Foxworth-Galbraith Lumber Company v. Dissmore (In re Dissmore)*, 2004 Bankr. Lexis 2401 (N.D. Tex. 2004).

18. This court finds that knowledge that a debt is owed does not rise to the level of a willful or knowing fraudulent misappropriation of funds pursuant to 11 U.S.C. § 524(a)(4) and the TCTFA. The court finds that the fact that Mrs. Swor simply was aware that some money was still owing to Bartley while she paid other invoices does not result in a knowing intent to defraud.

19. An affirmative defense to a trustee's liability for misapplication under the TCTFS is if the trustee uses the proceeds "to pay the trustee's actual expenses directly related to the construction." The Fifth Circuit has held that no breach of fiduciary obligation occurred if the funds were used to pay bills necessary to keep the business operating, even if the trustee paid creditors who were not beneficiaries of the trust fund, so long as the payments that were made were payments necessary to keep the projects or the company going. The statute does not prohibit the use of construction trust funds for overhead and other "directly related" expenses. *In re Boyle*, 819 F.2d 583 (5th Cir. 1987); *In re Nicholas*, 956 F. 2d 110 (5th Cir. 1992).

20. Mrs. Swor testified that funds received from construction projects were deposited in three general operating accounts and were used to pay overhead, taxes, payroll, and repayment of loans. The court finds that the evidence does not reflect that Debtors diverted the funds for their own use or for any use other than to maintain Swor's Glass as an ongoing business. The evidence does not show that the funds received on the projects upon which Bartley supplied materials, were knowingly or intentionally misapplied by Debtors, or used by Debtors to pay for more than actual expenses, or to pay expenses not directly related to the Debtors' business. The court finds that Bartley has failed to prove, by a preponderance of the evidence, that the Debtors attempted to deceive or defraud it out of any funds, knowingly or intentionally, for purposes of 11 U.S.C. § 523(a)(4).

21. For a debt to be nondischargeable under section 523(a)(6) for wilful and malicious injury, Bartley must prove that there was actual intent to take an action that resulted in the intended harm or was substantially certain to cause the injury. *See In re Delaney*, 97 F.3d 800 (5th Cir. 1966). Bartley failed in this burden of proof.

Conclusions of Law

1. As a general policy, bankruptcy law favors permitting a debtor to discharge his debts, thereby affording him a "fresh start." *In re Tran*, 151 F.3d 339 (5th Cir. 1998). Section 523

enumerates certain exceptions to the dischargeability of a debt. Exceptions to discharge must be narrowly construed against the objecting creditor and liberally in favor of the debtor to further the Code's purpose of a fresh start. *See Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980).

2. Section 523 is governed by a preponderance of the evidence burden of proof. The creditor is required to show that his debt falls within one of the exceptions identified in this section. *Grogan v. Garner*, 498 U.S. 279 (1991).

3. Elements of fraud under 523(a)(2) are stated as: that the debtor made the representation; that at the time he knew that they were false; that he made them with the intention and purpose of deceiving the creditor; that the creditor relied on such representation; and that the creditor sustained the alleged loss and damage as the proximate result of the representation made. See *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Miller*, 5 B.R. 424 (Bankr. W.D.La. 1980); *In re Pommerer*, 10 B.R. 935 (Bankr. D.C. Minn. 1981); *In re Smith*, 113 B.R. 297 (N.D.Tex. 1990); *Matter of Church*, 69 B.R. 425 (N.D.Tex. 1987).

4. False representation need not be made in writing. Actual fraud suffices and consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another. Actual fraud is something said, done or omitted with the design of perpetrating what is known to be

a cheat or deception. 4 Collier on Bankruptcy ¶ 523.08[1][e] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). Bartley failed to sustain its burden of proof to establish that its claim is nondischargeable pursuant to section 523(a)(2).

5. Section 523(a)(4) provides that a debtor is not discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To show nondischargeability for fraud or defalcation, a creditor must prove that (1) the debt was caused by fraud or defalcation, and (2) there was a fiduciary relationship between the parties at the time the debt was created. *In re Chavez*, 140 B. R. 413 (Bankr. W.D. Tex. 1992).

6. The discharge exception under section 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. Abrams (In re Miller)*, 156 F.2d 598 (5th Cir. 1998); *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339 (5th Cir. 1998); *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583 (5th Cir. 1987).

7. "Fraud" for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud. *See In re Tripp*, 189 B.R. 29

(Bankr. N.D.N.Y. 1995); *In re McDaniel*, 181 B.R.883 (Bankr. S.D.Tex. 1994). Defalcation does not require intentional conduct but does require some degree of culpability to make a debt nondischargeable as a defalcation under section 523(a)(4).

8. The TCTFS provides that payments received on construction contracts for the improvement of real property are designated as "trust funds," and the recipient of those funds is deemed the "trustee" of those funds. Subcontractors who provide labor and materials on construction projects are "beneficiaries" of the trust. Tex. Prop. Code Ann. §§ 162.001, et seq.

9. Under section 532(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The TCTFS does not establish, without qualification, a technical or express trust. *See Boyle*, 819 F.2d 583 (5th Cir. 1987); *See also Matter of Nicholas*, 956 F. 2d 110 (5th Cir. 1992). It does not elevate every contractor who accepts construction funds or loans to a section 523(a)(4) fiduciary. It does so only to the extent that the statute defines wrongful conduct. *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339 (5th Cir. 1998).

10. The statute states that a trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds has misapplied

the trust funds. Misapplication of trust funds can result in a criminal penalty.

11. The statute includes a scienter requirement, evidence of an intentional and knowing diversion of funds, which resulted in a misapplication of the trust funds, i.e., "intentionally or knowingly or with intent to defraud." *See Nicholas,* 956 F. 2d at 112.

12. The statute does not impose a strict trust obligation on the trustee as it includes an affirmative defense to a trustee's liability for misapplication, by using the proceeds "to pay the trustee's actual expenses directly related to the construction." The statute does not prohibit the use of construction trust funds to pay bills necessary to keep the business operating (including overhead and other "directly related" expenses), even if the trustee paid creditors who were not beneficiaries of the trust fund. *In re Boyle*, 819 F.2d 583 (5th Cir. 1987)*; In re Nicholas,* 956 F. 2d 110 (5th Cir. 1992).

13. Further, the Texas Attorney General has concluded that the affirmative defense allows a contractor to pay funds out for overhead and other expenses, even if they are not readily traceable, as long as they were actually incurred. Op.Tex.Att'y Gen. No. JM-945(1988).

14. "Although labeled as an affirmative defense in the Texas statute, the beneficiary has the burden of proving that the

challenged debt falls within a Section 523(a)(4) exception, and 'must adduce some evidence that funds were misapplied' to prevail in an adversary proceeding." *Consolidated Electrical Distributors, Inc. (In re Cook)*, Not Reported in F.Supp.2d, 2006 WL 470586 (S.D.Tex. 2006)(citing *In re Nicholas*).

15. Section 523(a)(6) of the Bankruptcy Code states that "[a] discharge ... does not discharge a debtor from any debt - for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" as used in 523(a)(6) means deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm; the "reckless disregard" standard is not sufficient grounds to hold conduct "willful and malicious." *In re Dean*, 79 B.R. 659 (Bankr. N.D. Tex. 1987). 4 Collier on Bankruptcy ¶ 523.16 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

16. The court concludes that based upon the facts established at trial, Plaintiff has not met its burden of proof in establishing that this debt should be deemed nondischargeable pursuant to § 523(a)(6).

Based upon these findings of fact and conclusions of law, the court renders a Judgment in favor of Debtors and dismisses the

complaint. The court will enter a separate Judgment in conjunction with these findings of fact and conclusions of law.

Signed at Houston, Texas this 4th day of April, 2008.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE